```
                                                             USDC SDNY
                                                             DOCUMENT
UNITED STATES DISTRICT COURT                                 ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                                DOC #:_____
------------------------------------------------------------X DATE FILED: 09/20/2021
                                                          :
G&G CLOSED CIRCUIT EVENTS, LLC,                           :
                                                          :
                        Plaintiff,                        :
                                                          :      20-cv-7457 (LJL)
              -v-                                         :
                                                          :     OPINION & ORDER
GERALDO PACHECO and ALGE & DELUCA, LLC,                   :
                                                          :
                        Defendants.                       :
                                                          :
------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Plaintiff G&G Closed Circuit Events, LLC ("G&G" or "Plaintiff") moves, pursuant to Federal Rule of Civil Procedure 55(b)(2), for a default judgment against Defendants Geraldo Pacheco ("Pacheco") and Alge & Deluca, LLC ("Alge & Deluca") (collectively "Defendants"). For the following reasons, Plaintiff's motion is granted.

## BACKGROUND

The following facts are drawn from Plaintiff's complaint and are accepted as true for purposes of this motion.

Plaintiff G&G is a commercial distributor and licensor of sporting programs. Dkt. No. 1 (the "Complaint" or "Compl.") ¶ 23. Under a license agreement with Golden Boy Promotions, LLC, Plaintiff was granted the exclusive nationwide commercial distribution (closed-circuit) rights to the Saul Alvarez v. Gennady Golovkin, IBF World Middleweight Championship Fight Program including undercard or preliminary bouts (collectively referred to as "the Program"), telecast nationwide on Saturday, September 16, 2017 at commercial establishments such as theaters, arenas, bars, clubs, lounges, restaurants, and the like throughout New York and other geographic locales. *Id.* ¶ 19; *see also id.* Ex. A. Pursuant to the license agreement, Plaintiff

entered into sublicensing agreements granting commercial establishments the rights to publicly exhibit the Program. Compl. ¶ 20. Commercial establishments in New York could only exhibit the Program if authorized by Plaintiff. *Id.* ¶ 21. Plaintiff marketed and distributed its closed-circuit rights and contracted with various establishments throughout New York to grant the right to broadcast the Program for a fee. *Id.* ¶ 22.

The transmission of the Program was electronically coded or "scrambled" and had to be decoded with electronic decoding equipment to receive the signal and telecast clearly. *Id.* ¶ 24. The Program originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal. *Id.* If a commercial establishment was authorized by Plaintiff to receive the Program, the establishment was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal, or the establishment's satellite or cable provider was notified to unscramble the reception of the Program for the establishment. *Id.* ¶ 25.

Defendant Pacheco is owner and principal of Defendant Alge & Deluca, which owned and operated the commercial establishment doing business as Lexa Bar and Garden ("Lexa") in the Bronx, New York. *Id.* ¶ 9. On the night of the Program, Lexa broadcast the Program on four screens with approximately 20 people in attendance, *id.* ¶ 26, and sold alcoholic and non-alcoholic beverages to its patrons, *id.* ¶ 27. Defendant Pacheco is alleged to have specifically directed the employees of Lexa to unlawfully intercept, receive, and broadcast the Program at Lexa or to have intentionally intercepted and/or published the Program at Lexa himself. *Id.* ¶ 14. The commercial fee for an establishment the size of Lexa to broadcast the Program lawfully was $2,500.00. *Id.* ¶ 28. Neither Defendant Pacheco nor Defendant Alge & Deluca paid this fee to Plaintiff. *Id.*

**PROCEDURAL HISTORY**

Plaintiff filed the Complaint in this Court on September 11, 2020, alleging that Defendants had unlawfully intercepted, received, and exhibited the Program in violation of 47 U.S.C. § 605(a) (Count I) and 47 U.S.C. § 553(a) (Count II).  *Id*. ¶¶ 29-45.  Defendants Pacheco and Alge & Deluca were served on November 16, 2020 and November 20, 2020, respectively, Dkt. Nos. 10, 11, and have not yet answered the Complaint or otherwise appeared in this case.  On December 28, 2020, the Clerk entered Certificates of Default as to the Defendants.  Dkt. Nos. 16, 17.  On January 12, 2021, Plaintiff moved for a default judgment.  Dkt. No. 18.  A hearing on the default judgment motion was held on September 20, 2021.  No counsel for Defendants appeared for the hearing.

**DISCUSSION**

**I.     Jurisdiction**

Plaintiff's claims arise under the Communications Act of 1934, as amended, 47 U.S.C. § 605 *et seq.*, and the Cable & Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553 *et seq.*, and the Court accordingly has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  The Complaint also is supported by well-pled allegations as to personal jurisdiction.

**II.    Liability**

The allegations in the Complaint, accepted as true, are sufficient to establish liability. *See Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (stating that a court may "enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true").

47 U.S.C. § 605(a) "generally prohibits the unauthorized use or publication of wire or radio communications." *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007 (2d Cir. 1993) ("*Sykes I*"). "Section 605 has been interpreted to apply to the interception of satellite communications." *Garden City Boxing Club, Inc. v. Polanco*, 2006 WL 305458, at *4 (S.D.N.Y. Feb. 7, 2006) (citing *Int'l Cablevision, Inc. v Sykes*, 75 F.3d 123, 133 (2d Cir. 1996) ("*Sykes II*"), and *Garden City Boxing Club, Inc. v. Guzman*, 2005 WL 1153728, at *2 (S.D.N.Y. Apr. 26, 2005)). Meanwhile, 47 U.S.C. § 553(a)(1) prohibits the unauthorized interception or receipt of "any communications service offered over a cable system." In short, "[w]hereas section 605 applies to the theft of a radio communication whether or not the radio communication is thereafter sent out over a cable network, section 553 applies to communication thefts from a cable network, whether or not the communication originated as a radio communication." *Joe Hand Promotions, Inc. v. Batista*, 2021 WL 3855315, at *5 (S.D.N.Y. July 23, 2021), *report and recommendation adopted,* 2021 WL 3855311 (S.D.N.Y. Aug. 27, 2021) (quoting *J & J Sports Prods., Inc. v. La Ruleta, Inc.*, 2012 WL 3764062, at *2 (E.D.N.Y. Aug. 7, 2012)).

Plaintiff alleges that the Program originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal and that Defendants intercepted the scrambled signal without a license and broadcast the Program at Lexa. These allegations are sufficient to establish liability under both sections 605 and 553. *See also G&G Closed Cir. Events, LLC v. Sanchez Torres*, 2021 WL 101200, at *2 (S.D.N.Y. Jan. 11, 2021) ("Where, as here, the intercepted program is transmitted via cable and satellite, sections 553 and 605 both apply.").

**III.    Statutory Damages**

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup,*

*Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

Sections 553 and 605 set forth similar remedial schemes, but they differ in "(1) the range of statutory damages available to an aggrieved party, and (2) the respective provisions for attorneys' fees." *Polanco*, 2006 WL 305458, at *4. Under both statutory sections, the aggrieved party may elect to recover either actual damages and any profits that are attributable to the violation or statutory damages. 47 U.S.C. §§ 553(c)(3)(A), 605(e)(3)(C)(i). However, while section 553 provides statutory damages "in a sum of not less than *$250* or more than $10,000," *id.* § 553(c)(3)(A)(ii) (emphasis added), section 605 provides statutory damages "in a sum of not less than *$1,000* or more than $10,000," *id.* § 605(e)(3)(C)(i)(II) (emphasis added). Furthermore, while section 553 allows for additional damages in "an amount of not more than *$50,000*" for violations "committed willfully and for purposes of commercial advantage or private financial gain," *id.* § 553(c)(3)(B) (emphasis added), section 605 permits additional damages in "an amount of not more than *$100,000*" in cases in which the violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," *id.* § 605(e)(3)(ii). With respect to attorneys' fees and full costs, a court "may" direct recovery to an aggrieved party who prevails under section 553, *id.* § 553(c)(2)(C), whereas a court "shall" direct recovery in the same situation under section 605, *id.* § 605(e)(3)(B)(iii). Importantly, in cases where both sections 553 and 605 were violated, damages should be awarded only under section 605 instead of the "lesser damages available" under section 553. *Sykes I*, 997 F.2d at 1009; *see also Polanco*, 2006 WL 305458, at *5.

Plaintiff here elects to recover statutory damages rather than actual damages and accordingly, under section 605, seeks $7,500 in statutory damages and $22,500 in enhanced statutory damages, a three times multiplier of the statutory damages award.[1]

"Generally speaking, courts award statutory damages based on the greater of two numbers: the flat fee that Plaintiff would have charged Defendants to air the programming at their establishment or the sum of what each individual who viewed the event at Defendants' establishment would have paid to view it at home." *J & J Sports Prods., Inc. v. Sugar Cafe Inc.*, 2018 WL 324266, at *1 (S.D.N.Y. Jan. 5, 2018). Plaintiff requests that the Court not use either approach because the first method undervalues the Program, fails to compensate Plaintiff adequately, and conflates the two separate statutory sections providing for the choice between actual damages and statutory damages; and the second method would understate the seriousness of Defendants' conduct. Dkt. No. 19 at 6-7. Plaintiff concedes correctly that, if the Court adheres to the approaches previously used within the Second Circuit, the statutory damages award would be the equivalent of the licensing fee—$2,500. *Id.* at 8. Although the Court enjoys discretion to award a sum different from the amount of the licensing fee, it is not persuaded at

---

[1] At the default judgment hearing, counsel for Plaintiff raised additional facts not contained within the Plaintiff's filings before the Court. These additional facts include that Plaintiff had previously sued Defendants for similar conduct in a separate case. *See* Complaint, *G&G Closed Circuit Events, LLC v. Pacheco et al.*, No. 20-cv-3492 (S.D.N.Y. May 5, 2020). When the Court asked why these facts were not included in their default judgment filings, counsel for Plaintiff averred that the individual preparing those filings was not aware of the earlier case. At the hearing, the Court reserved ruling on whether Plaintiff should be permitted to supplement its filings with this information. "[A] party is generally expected to submit, at the time that a motion is filed, all the materials that it wishes the Court to consider." *In re Repetitive Stress Inj. Litig.*, 165 F.R.D. 367, 371 (E.D.N.Y. 1996). "[T]he decision to permit a party to file supplemental submissions is within the Court's discretion." *Id.* The Court rules that Plaintiff will not be granted leave to supplement its submissions because Plaintiff has not suggested that the new materials "could not, by due diligence, have been obtained earlier" or that there is "any claim of excusable neglect." *Id.*

6

this time to do so and to depart from the established approaches; therefore, a statutory damages award of $2,500 is appropriate here. *See, e.g.*, *Sanchez Torres*, 2021 WL 101200, at *3 (awarding statutory damages equal to the licensing fee); *G&G Closed Cir. Events, LLC v. Batista*, 2021 WL 293150, at *2 (S.D.N.Y. Jan. 28, 2021) (same).

Enhanced statutory damages of $7,500, three times the statutory damages amount, are also appropriate in this case. The violation was committed willfully as "signals do not descramble spontaneously." *Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999). The violation was also for purposes of direct or indirect commercial advantage as the Complaint alleges that the showing of the Program resulted in increased profits or financial benefit to Lexa. Compl. ¶ 15. Plaintiff argues that a three times multiplier is appropriate, *see* Dkt. No. 19 at 10, and this aligns with how courts in this District have calibrated enhanced damages in similar cases. *See, e.g.*, *Batista*, 2021 WL 293150, at *2 ("In line with recent precedent, a more appropriate award against these defendants, who are not alleged to be recidivist offenders, would be damages equal to the licensing fee plus three times that amount in enhanced damages."); *Joe Hand Promotions, Inc. v. Batista*, 2021 WL 3855315, at *9 (S.D.N.Y. July 23, 2021), *report and recommendation adopted,* 2021 WL 3855311 (S.D.N.Y. Aug. 27, 2021) ("[T]he more current standard for enhanced damages in this District appears to be in line with our colleagues in the Eastern District—to award enhanced damages treble the amount of the statutory damages.").[2] This award of enhanced statutory damages helps

---

[2] *But see, e.g.*, *J&J Sports Prods., Inc. v. Fantasy Bar & Rest. Corp.*, 2018 WL 5018065, at *7 (S.D.N.Y. Sept. 20, 2018), *report and recommendation adopted sub nom. J & J Sports Prods., Inc. v. Fantasy Bar & Rest. Corp.*, 2018 WL 5016606 (S.D.N.Y. Oct. 15, 2018) ("The practice of trebling statutory damages [in the Eastern District of New York] . . . has generally not been followed by courts in this [D]istrict, which, on the basis of similar factual allegations, have instead tended to award a flat sum as enhanced damages.").

address the concerns about deterrence that Plaintiff raises with respect to the award of statutory damages. *See Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 491 ("A factor of three times the base award should serve as a reasonable deterrent against future violations."); *see also Batista*, 2021 WL 293150, at *2 ("In considering damages under Section 605, courts may look to a variety of factors, including the market value of the rights infringed and the revenue lost by plaintiff—i.e., the unpaid licensing fee—as well as the deterrent effect that damages might have on the infringer and third parties.").

The Court concludes that Plaintiff is entitled to a statutory damages award of $2,500 and an enhanced statutory damages award of $7,500.

## IV.    Interest, Costs, and Attorney's Fees

Plaintiff requests 30 days from the date of judgment to submit its motion for interest, costs, and attorneys' fees. This request is granted.

## CONCLUSION

Default judgment is GRANTED against Defendants in the amount of $10,000. Plaintiff is directed to submit its motion for costs and attorneys' fees by October 20, 2021.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 18 and enter judgment.

SO ORDERED.

Dated: September 20, 2021
      New York, New York

                                   LEWIS J. LIMAN
                               United States District Judge